United States Court of Appeals
For the Eighth Circuit
_____

No. 19-1578
_____

Judy Doe

*Plaintiff - Appellant*

v.

Michael L. Parson, Governor of the State of Missouri; Eric S. Schmitt, Attorney General of the State of Missouri; David A. Poggemeier, M.D., Chairman of the Missouri Board of Registration for the Healing Arts; James A. DiRenna, D.O., Member of the Missouri Board of Registration for the Healing Arts; Sara Martin, PhD, Member of the Missouri Board of Registration for the Healing Arts; Katherine J. Matthews; Jade D. James, M.D., Secretary of the Missouri Board of Registration for the Healing Arts; David E. Tannenhill, D.O., Member of the Missouri Board of Registration for the Healing Arts; John Doe I; John Doe II

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 16, 2020
Filed: June 9, 2020
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

A Missouri law requires Judy Doe to certify that she has had a chance to review certain information before having an abortion. This requirement, she alleges, violates her Satanist beliefs. The district court[1] dismissed both of her First Amendment claims, and we affirm.

I.

Missouri and Doe have different views on when life begins. Missouri's official position is that "[t]he life of each human being begins at conception." Mo. Rev. Stat. § 188.027.1(2), (5). Its informed-consent law requires women seeking an abortion to certify that they have received "[m]edically accurate information" that bears on "the decision of whether" to have one. *Id.* § 188.027.1(1)(b), 188.027.3.

Doe, who was pregnant at the time she filed this lawsuit, sees the matter differently. *See Doe v. Poelker*, 497 F.2d 1063, 1067 (8th Cir. 1974) (explaining that pregnancy is a "classic justification" for the capable-of-repetition-yet-evading-review exception to mootness that does not need to be "established" on appeal (citation omitted)). As a member of "The Satanic Temple," she believes that the "Human Tissue" that she was carrying was "part of her body." As she stated in her complaint, her "body is inviolable" and "[s]he alone" gets to decide what to do with it, regardless of "the current or future condition of the Human Tissue" within.

In her two-count complaint, Doe alleges that Missouri's informed-consent law violates the Establishment and Free Exercise Clauses of the First Amendment. The district court, concluding that neither count stated a claim, dismissed the case.

---

[1]The Honorable Henry Edward Autrey, United States District Judge for the Eastern District of Missouri.

II.

Before we address these two counts, Doe seeks to introduce a third: whether Missouri's informed-consent law imposes an undue burden on her right to an abortion. *See Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992). Her theory proceeds in two steps. First, the law infringes on her religious beliefs. Second, by infringing on her religious beliefs, the law creates an undue burden on her right to an abortion.

Missouri could not have had "fair notice" of this claim based on the complaint itself, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 514 (2002) (describing the basic purpose of pleading), which described the case as follows:

> This is an action for declaratory relief pursuant to 42 U.S.C. §1983 as all Defendants are acting under color of state law to deprive Plaintiff of her constitutional rights *under the Establishment and Free Exercise Clauses (the "Religion Clauses")* in obtaining an abortion in a manner required by her religious beliefs as an adherent to the tenets of The Satanic Temple.

(Emphasis added). It also lists only two counts: "**First Count – Violation of the Establishment Clause**" and "**SECOND COUNT – FREE EXERCISE VIOLATION**." *See Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999) (considering claims that were expressly pleaded in the complaint when deciding whether the defendant had notice of unpleaded claims).

The specific factual allegations just connect the dots for those two claims. The complaint refers to Missouri's views on life as "Missouri [t]enets," the informed-consent law as the "Missouri [l]ectionary," and says that neither serves any purpose other than making her feel guilty for not believing in them. All of this, according to the complaint, communicates a "religious belief." Nowhere, by contrast, do the

-3-

Appellate Case: 19-1578     Page: 3     Date Filed: 06/09/2020 Entry ID: 4921540

words "undue burden" or *Casey* appear, which creates the impression that this case is all about religion.

Doe nevertheless believes that we can consider her unpleaded claim for two reasons. The first is that she made an undue-burden *argument* in response to Missouri's motion to dismiss. Still, she had an obligation to amend her complaint once she identified the potential claim. *See* Fed. R. Civ. P. 15 (explaining how to amend a complaint); *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (pointing out that a responsive brief is neither the time nor the place to raise a new claim). The second is that an undue-burden claim was part and parcel of her religious-liberty claims from the start, because the First Amendment is at the "root" of *Casey*. Oral Arg. at 1:30–2:20; *cf. Casey*, 505 U.S. at 851 ("At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life."). Even if this were true—and we have every reason to believe that it is not—Missouri could not, without more, have anticipated Doe's creative reading of *Casey*. *See Casey*, 505 U.S. at 846–51 (locating the right to an abortion in the Fourteenth Amendment). In short, we will not permit Doe to plead a new claim now.

III.

We now turn to the two claims that do appear in the complaint. "At this stage, our task is to review the complaint de novo to determine whether it alleges one or more actionable claims." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 750 (8th Cir. 2019).

A.

Doe's Establishment Clause challenge focuses on the requirement that every woman seeking an abortion in Missouri must first receive a state-authored informed-consent booklet. The booklet expresses Missouri's view that "[t]he life of each

-4-

human being begins at conception [and that] [a]bortion will terminate the life of a separate, unique, living human being." Mo. Rev. Stat. § 188.027.1(2). It then goes on to describe "the probable anatomical and physiological characteristics of the unborn child at two-week gestational increments . . . ." *Id.*; *see also id.* § 188.027.1(5). Doe believes that the booklet violates the Establishment Clause in two ways.

First by promoting "Catholic dogma" about when life begins. *See Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."). The problem with this theory is that a state does not establish religion by passing a law that just "happens to coincide or harmonize with the tenets of some or all religions." *Harris v. McRae*, 448 U.S. 297, 319 (1980) (quoting *McGowan v. Maryland*, 366 U.S. 420, 442 (1961)) (upholding the Hyde Amendment's ban on publicly funded abortions). Mere alignment with certain religious beliefs, in other words, is not enough.

But Doe argues that there is something "more" than just alignment here, *id.* at 320, because Missouri has elected to publish its views on this topic, even though it is "highly divisive." Even so, taking sides on a divisive issue, even when it breaks down "along religious lines," does not establish religion either. *Clayton ex rel. Clayton v. Place*, 884 F.2d 376, 378–79 (8th Cir. 1989) (determining that a school district's no-dancing rule did not establish religion even though some local churches "staunchly opposed . . . social dancing" and viewed it as "sinful"). This is especially true here because, as the Supreme Court has recognized, a state is free to use "*its voice . . .* to show its profound respect for" life. *Gonzales v. Carhart*, 550 U.S. 124, 157 (2007) (emphasis added); *see also Casey*, 505 U.S. at 873 (plurality opinion) (explaining that *Roe* and its progeny had "undervalue[d] the State's interest in potential life").

-5-

Indeed, the circumstances of this case show why alignment alone cannot be enough. Some religions, including Catholicism, embrace the view that life begins at conception. Others, like Doe's Satanism, do not. *Any* theory of when life begins necessarily aligns with some religious beliefs and not others. So under Doe's theory, Missouri's only option would be to avoid legislating in this area altogether.

Not a problem, Doe says, because her second argument is that states may *never* adopt a "theory of when life begins." *Reprod. Health Servs. v. Webster*, 851 F.2d 1071, 1075–76 (8th Cir. 1988) (*Webster I*) (quoting *City of Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416, 444 (1983), *overruled by Casey*, 505 U.S. 833 (1992)), *rev'd*, 492 U.S. 490 (1989) (*Webster II*). At one time, this argument had legs. But as the unwieldy citation may make obvious, our statement from *Webster I* is no longer good law. The Supreme Court clarified in *Webster II* that states still have a role to play on this issue. *Webster II*, 492 U.S. at 506 ("*Roe v. Wade* implies no limitation on the authority of a State to make a value judgment favoring childbirth over abortion." (internal quotation marks and citation omitted)). And to the extent any doubt lingered, none remains now that the Supreme Court has decided *Carhart* and *Casey*. *Carhart*, 550 U.S. at 157; *Casey*, 505 U.S. at 873 (plurality opinion). So whatever support our statement in *Webster I* could have once provided Doe, it cannot help her today.

B.

The focus of Doe's free-exercise claim is on Missouri's certification requirement. Before she can have an abortion, Missouri law requires her to certify in writing that she has both had a chance to view an ultrasound at least 24 hours ahead of time, Mo. Rev. Stat. § 188.027.1(4), 188.027.3, 188.027.12, and received

-6-

Appellate Case: 19-1578   Page: 6   Date Filed: 06/09/2020 Entry ID: 4921540

an informed-consent booklet, *id.* § 188.027.1(2), (5), 188.027.3. Certifying these two facts, she alleges, would violate her Satanist beliefs.[2]

It does so, according to Doe, by forcing her to comply with a law that

> conditions her getting an abortion in a manner antithetical to the Satanic Tenets, including without limitation any law *that serves no medical purpose or purports to protect the interests of her Human Tissue.*

(Emphasis added). Her free-exercise claim, in other words, can be summed up in the following way: her religion allegedly "forbids certain conduct that the government requires." *Telescope Media Grp.*, 936 F.3d at 759.

Doe makes no argument, however, that the informed-consent law is anything other than "neutral" and "generally applicable." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 544, 546 (1993). In these circumstances, it must only survive rational-basis review, which requires it to be "rationally related to a legitimate government interest." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012); *see Telescope Media Grp.*, 936 F.3d at 759. To the extent Doe argues that the certification requirement lacks a rational basis,[3] we disagree. *Casey*

---

[2]According to Doe, the Satanic Temple has both "politically aware Satanists" and "*secularists* and advocates for individual liberty" among its members. (Emphasis added). Arguably, her own description raises the possibility that her beliefs about abortion may be political, not religious. *See Frazee v. Illinois Dep't of Emp't Sec.*, 489 U.S. 829, 833 (1989) ("[O]nly beliefs rooted in religion are protected by the Free Exercise Clause." (citation omitted)). Nevertheless, we assume, but do not decide, that she has done enough by alleging that her beliefs are "religious" and that she is a member of an organization that includes "Satanists."

[3]Doe believes the standard should be higher—something akin to strict scrutiny—but once again, her complaint does not support her theory. On appeal, she suggests that her free-exercise claim is really a hybrid of two separate constitutional

-7-

Appellate Case: 19-1578     Page: 7     Date Filed: 06/09/2020 Entry ID: 4921540

itself recognized that informed-consent laws like this one serve "the legitimate purpose of reducing the risk that a woman may elect an abortion, only to discover later, with devastating psychological consequences, that her decision was not fully informed." *Casey*, 505 U.S. at 882 (plurality opinion); *see id.* at 883–87 (explaining that provisions requiring doctors to provide information to those seeking an abortion and imposing a waiting period were "reasonable means" of pursuing legitimate government interests).

IV.

We accordingly affirm the judgment of the district court.

———————————————

---

rights: one prohibiting Missouri from unduly burdening her right to an abortion and the other allowing her to freely exercise her religion. *See Telescope Media Grp.*, 936 F.3d at 758–60 (noting that, under a hybrid-rights theory, strict scrutiny would apply to a free-exercise claim "intertwined" with a free-speech claim). But in addition to failing to plead an undue-burden claim, any suggestion of the hybrid-rights theory is absent from her complaint too. Without either, we cannot consider this argument. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

-8-